IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DEC 2 0 2012

EMMETT J. JAFARI,

Plaintiff,

v.

Civil Action No. 3:08-CV-629-JRS-DJN

OLD DOMINION TRANSIT
MANAGEMENT COMPANY d/b/a The
Greater Richmond Transit Company,

Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the parties' cross motions for summary judgment (ECF Nos. 89, 91).[1] Plaintiff Emmett Jafari ("Jafari") seeks damages for common law defamation and retaliation in violation of the Fair Labor Standards Act ("FLSA") from Defendant Old Dominion Transit Management Company (d/b/a The Greater Richmond Transit Company) ("GRTC"). The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court, and argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). The Court finds that any allegedly defamatory statements in this case were protected by qualified privilege. The Court further finds that GRTC had a legitimate reason for Jafari's termination, thus his FLSA claim

---

[1] A number of other motions are pending, including the following: Jafari's Sealed Motion to Compel (ECF No. 63), Sealed Motion to Strike or Suppress (ECF No. 64), Sealed Motion to Strike (ECF No. 66), Sealed Motion for Injunctive Relief (ECF No. 109) and Letter Request to Add a Claim for Punitive Damages (ECF No. 111), as well as GRTC's Motion for Leave to File Sur-Reply (ECF No. 86). Given the resolution of the summary judgment motions, the Court DENIES the remaining motions and requests AS MOOT.

cannot succeed. For these reasons, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 91) and GRANTS Defendant's Motion for Summary Judgment (ECF No. 89).

## I. FACTUAL BACKGROUND

Except as indicated, the following facts are not in dispute. On February 26, 2006, Jafari began work as a Specialized Transportation Field Supervisor in the "C-Van" Department for Defendant, a government-owned bus company commonly known as GRTC. C-Van drivers provide transportation services for clients enrolled in the Virginia Initiative for Employment Not Welfare ("VIEW") program.

In November 2006, GRTC changed the company's compensation plan, including an increase to the salary range for Jafari's pay grade. On November 27, 2006, Jafari wrote GRTC Human Resources Director, Kim Ackerman, noting that his pay fell below the new minimum provided for his grade. In reply, Ackerman explained that the company would address the pay discrepancy at Jafari's February 2007 employee evaluation. Jafari's evaluation occurred in March 2007, and Jafari complained thereafter that negative driver opinions unfairly worsened his evaluation score. Nonetheless, Jafari's annual salary jumped from $31,000.00 to $36,418.00 following his evaluation.

In October 2007, Jafari visited the home of VIEW client Rylanda Dark prior to her scheduled pick-up by driver John Rush. Jafari alleges that he was dispatched to Dark's home in order to address a conflict between Dark and Rush and also to provide Dark with a copy of a passenger ride guide. GRTC alleges that Rush told Eldridge Coles, GRTC's Chief Operating Officer ("COO") at the time, that he observed Jafari and Dark engaging in a seemingly heated conversation while Rush waited for Dark to board the van. Rush allegedly told Coles that when Dark boarded the van, she complained that Jafari had said to her: "If you have something to say,

say it to my face." (Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Supp. Mem.") 4, ECF No. 96.) The parties dispute whether or not Dark actually made this complaint.

The parties do agree, however, that Coles then told Jafari's direct supervisor, Von Tisdale, that "a customer had complained that Mr. Jafari told her 'if you have something to say, say it to my face'" (Def.'s Supp. Mem. 4, ECF No. 96.) Tisdale then related the statement to both Jafari and the assistant manager, Sandra Stanley. Jafari denied making the statement, and nothing adverse to Jafari came of the contretemps. Apparently to prevent further similar squabbles, on November 1, 2007, Tisdale directed that GRTC's Field Supervisors should not meet with clients in their residences. Rather, future communications with clients were to be by telephone or writing.

Jafari wrote Tisdale on November 6, 2007 and wrote Ackerman on December 5, 2007, raising in both messages essentially the same grievances: (1) that Coles unfairly handled the Rylanda Dark affair, (2) that Jafari's job was supervisory, thus he should get a pay hike, (3) that Jafari's job was non-supervisory, thus he should receive overtime pay under the FLSA, and (4) that Jafari deserved additional salary for On-Call work. Jafari's November 6, 2007 email to Tisdale also indicated his intention to seek work elsewhere.

On January 11, 2008, driver John Rush (who had reported the Rylanda Dark complaint) picked up four clients late. Jafari told Stanley about the incident and began an investigation. (Am. Compl. ¶ 60, ECF No. 33-1). In a classic case of overkill, Jafari submitted a four-page report about the bus driver being late. He accused Rush of at least eight (8) rule violations and included thirteen (13) GPS maps detailing Rush's exact movements over a roughly two-hour period on the relevant date.

Jafari's desire to nail Rush turned out to be his undoing. To support his investigation, Jafari obtained a handwritten complaint about Rush from one of the passengers, Brittany Randolph. At a January 25, 2008 staff meeting, Jafari was asked if, contrary to instructions, he had visited Randolph's home or workplace in order to obtain this handwritten statement. Jafari acknowledged that he did obtain the written statement at Randolph's home and that he also visited her workplace to discuss the complaint. (*See* Jafari Dep., 322:20-324:25, Sept. 12, 2012, ECF No. 94-1; Pl.'s Comp. Index of Ex., Ex. 68, ECF 100.) At the January 25 meeting, Ackerman also questioned Jafari about a different incident, his denial of another driver's request for bereavement leave. In late December 2007, Ackerman had learned of a threatened union grievance against Jafari citing this denial, leading to his questions to Jafari.

At a February 1, 2008 meeting with Stanley and Ackerman, Coles informed Jafari that he was being terminated and presented Jafari with a letter summarizing the reasons for his discharge. The discharge letter refers to Randolph's written statement and states that "the client . . . indicated to GRTC management that [Jafari] went to her place of work and her home in order to get a written statement from her. This is in conflict with how you were previously asked to address client complaints." (Pl.'s Comp. Index of Ex., Ex. 71, ECF 100.) The letter further states: "Your effectiveness as a supervisor has declined with your staff as well as the management team to the point where we have no option but to terminate your employment." *Id.*

## II. LEGAL STANDARD

When faced with cross-motions for summary judgment, the Court applies the same standard as that applied to individual motions for summary judgment. *See Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The Court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of

4

law." *Id.* at 523 (internal citations and quotations omitted). A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If there is no genuine dispute as to any material fact, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal citations and quotations omitted).

A court must look to the specific facts pled to determine whether a triable issue exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1996).[2] The moving party bears the burden of establishing the nonexistence of a triable issue of fact by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325 (internal quotations omitted). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict." *Anderson*, 477 U.S. at 252.

All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." *Rossignol*, 316 F.3d at 523 (internal citations and quotations omitted). But "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). If, therefore, the

---

[2] Of course, a court must typically construe a pro se litigant's pleadings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), especially in a civil rights case. *See Brown v. N.C. Dep't of Corrections*, 612 F.3d 720, 722 (4th Cir. 2010) ("'[l]iberal construction of the pleading is particularly appropriate' because it 'is a pro se complaint raising civil rights issues'") (internal citations omitted); *see also Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).

nonmoving party's evidence is only colorable or is not significantly probative, the court may grant summary judgment. *Anderson*, 477 at 249–50.

## III. DISCUSSION

### A. Defamation Claim

Jafari claims that GRTC is liable for defamation based on Coles' statement to Tisdale that "a customer had complained that Mr. Jafari told her 'if you have something to say, say it to my face.'" (Def.'s Supp. Mem. 4, ECF No. 96.) Virginia law, which governs here, does not distinguish between written defamation (libel) and oral defamation (slander). *See Jordan v. Kollman*, 269 Va. 569, 575 (Va. 2005); *Fleming v. Moore*, 221 Va. 884, 889 (Va. 1981) (citing *Shupe v. Rose's Stores*, 213 Va. 374, 376 (Va. 1972)). The elements of defamation in Virginia are "(1) publication of (2) an actionable false statement with (3) the requisite intent." *Jordan*, 269 Va. at 575. The Court will assume at this stage that Coles' statement is actionable, and turn to the nub of the case: whether Coles published the statement with the requisite intent.[3]

In order to prove publication, Jafari must establish that GRTC communicated the actionable statement to a third party without a privilege to do so. *See Montgomery Ward & Co. v. Nance*, 165 Va. 363, 379 (Va. 1935). The doctrine of qualified privilege applies to statements "made between co-employees and employers in the course of employee disciplinary or discharge matters," provided that the statement is not made with malice. *Larimore v. Blaylock*, 259 Va. 568, 572 (Va. 2000); *see also Southeastern Tidewater Opportunity Project v. Bade*, 246 Va. 273, 275-76 (Va. 1993). "[E]mployment matters are occasions of privilege in which the absence of

---

[3] GRTC argues that Coles' statement is true (and therefore not actionable) since "there is nothing false about Coles' statement to Tisdale because he had in fact received notice that a customer had complained." (Def.'s Reply Brief Supp. Mot. Summ. J. 3, ECF No. 105.) Coles' statement to Tisdale, however, was not that he had received notice of a complaint, but rather that a complaint against Jafari had actually been made, a fact which the parties dispute. Because the parties dispute what both Coles and Rush said, summary judgment on this ground is not appropriate.

malice is presumed ... [but] [t]his privilege is lost if defamatory statements are communicated to third parties who have no duty or interest in the subject matter, even if those third parties are fellow employees." *Larimore*, 259 Va. at 574-75. When a defendant makes a statement within the scope of qualified privilege, "without malice in fact, [the statement] is not actionable, *even though the imputation is false, or founded upon erroneous information.*" *Id.* at 573 (quoting *Chesapeake Ferry Co. v. Hudgins*, 155 Va. 874, 906-07 (Va. 1931)) (emphasis added). The truth or falsity of the statement, therefore, is not material. Rather, the speaker's motivation in making the statement is determinative.

As this Court has already determined, Coles' statement to Tisdale enjoys a qualified privilege as a communication between company management pursuant to their shared "duty to monitor or manage Jafari's work performance." *Jafari v. Old Dominion Transit Mgmt. Co*, 3:08-CV-629, 2008 U.S. Dist. LEXIS 97037, at *35 (E.D. Va. Nov. 26, 2008) (rev'd on other grounds). Jafari maintains that GRTC loses this privilege because Cole discussed the statement "with everyone he could engage on the subject" (Pl.'s Resp. Def.'s Mot. Summ. J. 12-13, ECF No. 98). The record, however, identifies only Ackerman and Stanley as others that GRTC informed of Coles' statement to Tisdale. (Pl.'s Mot. Summ. J. Ex. 97D, ECF No. 93.) Ackerman is GRTC's Human Resources Director, and Stanley was Jafari's acting supervisor during the inquiry into the Rush investigation. As such, both Ackerman and Stanley had a duty to monitor or manage Jafari so that the communication of Coles' statement to these persons remains in the scope of the qualified privilege.

Jafari can only defeat this qualified privilege by showing by clear and convincing evidence[4] that the words were spoken with the requisite intent—in this case, common-law

---

[4] "Clear and convincing evidence is that degree of proof which produces in the mind of the trier of facts a firm belief or conviction upon the allegations sought to be established." *Southeastern*

7

malice. *See Southeastern Tidewater*, 246 Va. at 276. To prove common-law malice, Jafari must show that the words were motivated by and spoken with "some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff; or . . . that the communication was made with such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of the plaintiff." *Id.* at 276 (quoting *Preston v. Land*, 220 Va. 118, 120-21 (Va. 1979)). "The rule that the statements and conduct of a defendant after the utterance of a slander is admissible to show malice, is unquestioned." *Kroger Grocery & Baking Co.*, 171 Va. 158, 163 (Va. 1938). Jafari may not satisfy his burden merely by making unsupported, conclusory statements that GRTC acted with malice. *See Echtenkamp v. Loudon Cnty. Pub. Sch.*, 263 F.Supp.2d 1043 (E.D. Va. 2003) (a plaintiff's repeated assertions that the defendants acted with malice and a motive of personal spite and revenge do not sufficiently show malice to overcome the qualified privilege).[5] Applying the appropriate burden and viewing the disputed evidence in the light most favorable to Jafari, the Court finds that Jafari has failed to produce facts from which a rational juror could find that Coles' statement was made with common-law malice.

None of the evidence relied upon by Jafari comes close to establishing malice. First, Jafari says that Coles solicited other employees for negative opinions of Jafari to use in his evaluation, and that Rush's statement about the Dark complaint arose from such efforts. (Mot. J. ¶¶ 12, 20, ECF No. 1; *see* Am. Compl. ¶ 36, ECF No. 33-1; Pl.'s Brief Supp. Pl.'s Mot. Summ. J. ("Pl.'s Supp. Mem.") 21, ECF No. 92.) Second, Jafari claims that Coles sought to humiliate

---

*Tidewater*, 246 Va. at 276 (quoting *Oberbroeckling v. Lyle*, 234 Va. 373, 379 (Va. 1987); *Fred C. Walker Agency, Inc. v. Lucas*, 215 Va. 535, 540-41 (Va. 1975)).

[5] Jafari maintains that this Court's decision on GRTC's prior motion to dismiss (ECF No. 12) means that he should prevail over GRTC's motion for summary judgment. At summary judgment, the standard is different: the plaintiff cannot simply assert that malice exists, but must come up with evidence to prove its existence.

Jafari by criticizing Jafari sharply, berating Jafari in meetings, or telling Jafari that he was angry with him in front of Jafari's colleagues without explaining why. (*See* Am. Compl. ¶¶ 38, 41, 45, ECF No. 33-1; Pl.'s Supp. Mem. 5, 22, ECF No. 92; Pl.'s Opp. Def.'s Mot. Dismiss ("Pl.'s Opp. Mem.") ¶ 12, ECF No. 8.) Third, Jafari tries to demonstrate Coles' personal spite by alleging that GRTC did not adorn the C-Van vehicles with an emblem in recognition of a 2007 national award received due to Jafari's work, but did so in 2008 following an award to a different division. (Pl.'s Supp. Mem. 5-6, 24, ECF No. 92.) Fourth, Jafari, an African-American, further suggests that Coles was motivated by racial hatred, shown by the fact that Coles knew that Stanley had previously used racial epithets in reference to employees but took no action. (Mot. J. ¶ 7, ECF No. 1.) Fifth, Jafari also relies on his assertion that the Dark complaint never existed. (*See* Mot. J. ¶¶ 12, 14, ECF No. 1; Pl.'s Opp. Mem. ¶¶ 11-13, ECF No. 8.) Lastly, Jafari maintains that Coles is "[s]o obsessed . . . with attaining any negative comments or complaints [Coles] can muster about plaintiff," that GRTC wrongly retained documents about a union grievance against Jafari. (Pl.'s Supp. Mem. 23, ECF No. 92; *see id.* at 14; Pl.'s Compr. Index of Ex., Exs. 75, 78, ECF No. 100.)

To be direct, these facts, viewed in the light most favorable to Jafari, do not demonstrate malice. Jafari provides no evidence to support his assertion that Coles solicited the statement from Rush about the alleged Dark complaint. Although Coles allegedly told Jafari in front of other coworkers that he was mad at Jafari in August or early September 2007, Jafari admittedly walked away without finding out why Coles was purportedly angry or later following up with Coles. (Jafari Dep., 315:1-316:21, Sept. 12, 2012, ECF No. 94-1.) This allegation is simply insufficient proof that, when Coles relayed a purported client complaint to Jafari's supervisor more than two months later, Coles spoke with personal spite or ill-will. Similarly, the allegations

9

that GRTC did not adorn its vehicles in recognition of an award won by Jafari's department and that Coles failed to act on information that Stanley had used racial epithets in the workplace demonstrate, at most, indifference.

Much of the supposedly malevolent conduct that Jafari attributes to Coles consists of nothing more than the ordinary responsibilities of a supervisor. With respect to the Dark complaint, Coles acted pursuant to his duties as then-COO and brought a complaint about Jafari to the attention of Jafari's direct supervisor. No disciplinary action occurred because of the Dark complaint, and management informed Jafari that they considered the matter closed. Further, Coles and Ackerman asked the other Field Supervisor to leave the January 25, 2008 meeting before they questioned Jafari to determine if his investigation into Rush was biased (Pl.'s Reply Supp. Mot. Summ. J. 10, ECF No. 107). This care to avoid discussing the Dark complaint in front of Jafari's colleague further belies any attempt to construe Coles' actions as malicious. Jafari's remaining allegations that Coles was motivated by malice are either wholly conclusory or mere speculations that do not support the propositions that Jafari asserts. Jafari has thus not provided evidence upon which a reasonable jury could find that Coles acted with common-law malice, and he cannot overcome GRTC's qualified privilege. Because there is no triable issue of material fact regarding Jafari's defamation claim, the Court GRANTS GRTC's Motion for Summary Judgment as to this claim.

### B. Jafari's Anti-retaliation Claims under FLSA

"The [FLSA] sets forth employment rules concerning minimum wages, maximum hours, and overtime pay." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1329 (2011). The anti-retaliation provision of the FLSA, section 215(a)(3), makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such

employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). Analysis of FLSA retaliation claims follows the familiar *McDonnell Douglas* scheme. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008); *Lettieri v. Equant, Inc.*, 478 F.3d 640, 649 (4th Cir. 2007). To state a *prima facie* case of retaliation under the *McDonnell Douglas* burden-shifting framework, a plaintiff must show that (1) he engaged in protected activity, (2) his employer took some adverse action against him, and (3) a causal connection existed between the protected activity and the adverse action. *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 458 (4th Cir. 2002). Once the plaintiff states a prima facie case, the burden shifts to the defendant to provide a legitimate, non-retaliatory reason for the adverse action. *Id.* If the defendant successfully articulates a legitimate, non-retaliatory reason, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was not the employer's true reason, but rather, is merely a pretext for unlawful retaliation. *Id. See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). At this point, the burden on the plaintiff to prove pretext merges with his ultimate burden of showing that some form of discrimination led to the adverse action against him. *See Tx. Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Internal complaints about FLSA violations, even if they never reach a government agency or the courts, are protected conduct for which no retaliation may lawfully occur. *See Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 437 (4th Cir. 2012) ("an interpretation that limits § 215(a)(3)'s coverage to complaints made before an administrative or judicial body would overly circumscribe the reach of the antiretaliation provision in contravention of the FLSA's remedial purpose"); *Jafari v. Old Dominion Transit Mgmt. Co*, 462 Fed. Appx. 385, 388-89 (4th Cir.

2012); *Kasten* 131 S.Ct. at 1334-35. The internal complaint must, however, clearly raise an FLSA issue, because "not every instance of an employee letting off steam constitutes the filing of a complaint within the meaning of § 215 (a)(3)." *Jafari*, 462 Fed. Appx. at 389 (internal citations and quotations omitted). In *Kasten v. Saint-Gobain Performance Plastics Corp.*, the Supreme Court held that "an employee's complaint to his employer [must be] 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by [the FLSA] and a call for their protection.'" *Jafari*, 462 Fed. Appx. at 389 (quoting *Kasten*, 131 S.Ct. at 1335); *see Minor*, 669 F.3d at 435-38 (adopting the *Kasten* standard). The *Kasten* standard governs Jafari's internal complaints on November 27, 2006, November 6, 2007, and December 5, 2007.

1. Jafari's Complaint on November 27, 2006

On November 27, 2006, Jafari complained to Ackerman about his pay grade and compensation. The gravamen of the November 27 letter is that GRTC needs to raise Jafari's salary. The letter does not complain of unpaid overtime or minimum wage violations or explicitly refer to the FLSA. It simply tells the employer that Jafari believes he should be in a different pay classification. No reasonable employer would understand Jafari's letter as an assertion of rights protected by the FLSA. Thus, the November 27 letter cannot serve as the basis of an FLSA claim.

2. Jafari's Complaints on November 6, 2007 and December 5, 2007

   A. Prima Facie Case of Retaliation

      *1. Engaging in Protected Activity*

With respect to his November 6, and December 5, 2007 messages to his employers, Jafari does establish a prima facie case of retaliation, and the messages constitute protected activity.

12

Although somewhat rambling, the communications do in some manner invoke the protection of the FLSA. Incongruously, Jafari complains, on the one hand, that his position was supervisory and that he should receive a pay hike to reflect his actual supervisory responsibilities.[6] On the other hand, Jafari also says in his correspondence that because his job is non-supervisory, he is entitled to overtime pay. Jafari also complains that he is entitled to additional wages for On-Call work. Whatever the merits of his grievances, in both 2007 complaints, Jafari explicitly invokes a right to overtime pay under the FLSA. While GRTC rightly points out that the mere inclusion of the term "FLSA" in a complaint does not automatically render the complaint into an assertion of rights under or related to the FLSA, it is plain in this case that part of Jafari's complaint in each letter is that he should not be considered exempt from the FLSA's overtime pay provisions.

GRTC, however, argues that in order for these complaints to be protected activities under the FLSA, Jafari must demonstrate that his complaints regarding overtime were made in good faith and were objectively reasonable. The Fourth Circuit has specifically declined to decide whether "a FLSA retaliation plaintiff must allege facts demonstrating that he had an objectively reasonable belief that his employer violated the FLSA." *See Darveau*, 515 F.3d at 341 (assuming without deciding that the FLSA retaliation plaintiff was required to demonstrate that his complaint regarding overtime pay was objectively reasonable and finding that the plaintiff satisfied this burden even though the claim was ultimately unsuccessful). Without clear Fourth Circuit authority as to whether Jafari must prove that his overtime complaints were objectively reasonable, the Court declines to impose this burden on him. Given that the letters invoke the FLSA, the Court finds that they amount to protected activity.

---

[6] As a supervisor, he would not be entitled to overtime pay under the FLSA.

13

## 2. Causation of Adverse Action

Jafari also sets forth a prima facie case that his complaints caused an adverse action. Although he incorrectly argues that any number of innocent actions constitutes retaliation, namely "the petty slights or minor annoyances that often take place at work," it is undisputed that he was ultimately terminated. *Burlington Northern & Sante Fe Ry. v. White*, 548 U.S. 53, 68 (2006). This termination clearly satisfies the adverse action requirement.

Jafari has shown a causal connection between the protected activity and the adverse action, in this case, his termination. A prima facie case of causality is "certainly satisfie[d]" when adverse action comes after the employer learns that the plaintiff has filed a discrimination charge. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (finding a prima facie causal connection between appellant's termination and her filing of a discrimination charge because she was fired after her employer learned of the discrimination claim). This causal connection is strengthened by a short period of time between the protected activity and adverse action. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998) ("merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient to make a prima facie case of causality) (internal citations and quotations omitted); *Francisco v. Verizon South, Inc.*, 756 F.Supp.2d 705, 725 (E.D. Va. 2010) ("[c]ircumstantial evidence [of retaliation] may be established by close temporal proximity.") In this case, Jafari complained to GRTC on November 6, 2007 and again on December 5, 2007, raising in both complaints his grievances about overtime pay. Coles returned from vacation on January 9, 2008, and provided Jafari with a termination letter roughly three weeks later, on February 1, 2008. (*See* Pl.'s Compr. Index of Ex., Exs. 46, 71, ECF No. 100.) Jafari has produced evidence of a causal connection, and thus, has stated a prima facie case of retaliation.

## B. Legitimate, Non-Retaliatory Reason for Adverse Action

Although Jafari has set forth a prima facie case of retaliation, GRTC has articulated a legitimate, non-retaliatory reason for Jafari's termination. "This burden [of articulating a non-discriminatory reason] is a burden of production, not persuasion." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).

GRTC has produced ample evidence of legitimate reasons to fire Jafari. Jafari's termination letter says that Jafari violated company policy when he obtained a handwritten statement at Brittany Randolph's residence and also visited her workplace during the January 2008 investigation into John Rush. Ackerman, Coles, and Stanley also indicate that Jafari had produced an overzealous and possibly biased investigative report into Rush's behavior due to Rush's prior involvement with the Dark complaint. (Ackerman Decl. Ex. 2, at 3-4, ECF No. 94-2; Coles Decl. Ex. 8, at 3-4, ECF No. 95-3; Stanley Decl. Ex. 15, at 1-2, ECF No. 95-10. *See* Def.'s Supp. Mem. 23, ECF No. 96.)

The termination letter also says that Jafari's effectiveness as a supervisor declined with his staff and the management team to the point where termination was necessary. Specifically, following the inquiry into how Jafari obtained a handwritten complaint from Randolph, Jafari purportedly became "unmanageable and insubordinate," and was defiant and disrespectful in response to criticism of his performance by his superiors. (Def.'s Supp. Mem. 23-24, ECF No. 96; *see* Ackerman Decl. Ex. 2, at 4, ECF No. 94-2; Coles Decl. Ex. 8, at 3-4, ECF No. 95-3; Stanley Decl. Ex. 15, at 2, ECF No. 95-10.) In addition, GRTC notes that Jafari "arbitrarily denied bereavement leave for a subordinate to attend a funeral" (*see* Def.'s Supp. Mem. 23, ECF No. 96), and this decision by Jafari led to a union grievance against the company. (*See* Ackerman Decl. Ex. 2, at 3, ECF No. 94-2.) The grievance was submitted to GRTC on February

4, 2008, but withdrawn after GRTC informed the union representative that Jafari had already been discharged. (*See* Coles Decl. Ex. 8, at 4, ECF No. 95-3; *id.* at Ex. A.)

Each of these proffered reasons is a legitimate, non-retaliatory reason sufficient to rebut any prima facie inference of retaliation. *See Robinson v. Affinia Group, Inc.*, 815 F.Supp.2d 935, 943 (W.D.N.C. 2011) ("Defendant's burden is low such that it need not persuade the court that it was actually motivated by the proffered reasons so long as it otherwise articulates a legitimate reason that is supported by the evidence") (quoting *Burdine*, 450 U.S. at 255) (internal quotations omitted). Thus, the burden returns to Jafari to prove that the articulated reasons are pretextual.

### C. Pretextual Reason for Adverse Action

Jafari has not offered sufficient evidence for a reasonable juror to conclude that GRTC's proffered reasons are pretextual and that retaliation was the real reason for Jafari's termination. At this point in the litigation, Jafari's burden "now merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256. The Court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination," and "it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the Jafari's termination." *Id.* at 299 (internal quotations and citations omitted); *see EEOC v. Clay Printing, Inc.*, 955 F.2d 936, 946 (4th Cir. 1992). It will not do simply to argue that the reasons are a lie or even incorrect. *See Smith v. First Union Nat. Bank*, 202 F.3d 234, 249 (4th Cir. 2000) (citing *Vaughan v. The Metrahealth Cos.*, 145 F.3d 197, 202 (4th Cir. 1998)); *DeJarnette*, 133 F.3d at 299 (an "employee's mere demonstration that his employer's belief may be incorrect is not sufficient to prove

discrimination") (citing *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)). Rather, the employee must show that an illegal intent motivated the dismissal. In deciding summary judgment, the Court will consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Price v. Thompson*, 380 F.3d 209, 214 (4th Cir. 2004) (quoting *Reeves*, 530 U.S. at 147).

To support his claim that GRTC's reasons for his termination are pretextual, Jafari primarily argues that GRTC never cited insubordination as a ground for his discharge until the instant Motions. In the Fourth Circuit, it is probative evidence of pretext when an employer offers different justifications at different times for the adverse action. *See EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001). Unfortunately for Jafari, he is factually incorrect. Although GRTC did not use the word "insubordination" in dealing directly with Jafari, it did accuse him of disobeying management directives—which is the definition of insubordination. *See Black's Law Dictionary* (9th ed. 2009) (defining insubordination as "a willful disregard of an employer's instructions, esp. behavior that gives the employer cause to terminate a worker's employment . . . [a]n act of disobedience to proper authority; esp., a refusal to obey an order that a superior officer is authorized to give"). The discharge letter states that Jafari acted "in conflict with how [Jafari was] previously asked to address client complaints." (Pl.'s Compr. Index. of Ex., Ex. 71, ECF No. 100.) Since "insubordination" is understood as an act done in disobedience to an authority's instructions, the Court finds that the discharge letter plainly indicates that Jafari acted insubordinately, even if it does not use this exact word.

Jafari also claims that GRTC changed its reasons for his termination in a letter from Lewis to Jafari on February 4, 2008 describing GRTC's concerns with Jafari's January 2008 investigation into Rush. Although this letter is dated after the discharge, it plainly reads as a response to Jafari's January 28, 2008 letter complaining about the inquiry into the Rush investigation, rather than an effort to create an alternative justification for termination. (*See* Pl.'s Compr. Index. of Ex., Ex. 71, ECF No. 100.)

Finally, Jafari argues he was actually a highly proficient and valuable employee. Although he may have had a good record at GRTC at one time, the record shows conclusively that Jafari admitted to traveling to Randolph's home concerning her complaint, in contradiction of the instruction that "management and supervisors will not go to client locations or residences to meet with them." (*See* Pl.'s Compr. Index. of Ex., Ex. 35, ECF No. 99.) It also contains undisputed evidence of the overblown investigation into Rush and the arbitrary denial of bereavement leave to another employee.

Jafari contends that there was never an actual union grievance against him concerning a driver's request for bereavement leave. Jafari himself, however, provided the Court with a copy of the union grievance and a list of problems that union members had with Jafari, including "denying people for Death-in-Family." (*See* Pl.'s Compr. Index. of Ex., Exs. 75, 78 ECF No. 99.) The fact that the union withdrew the grievance after Jafari's discharge does not render GRTC's reference to the threatened grievance a false reason for termination.

Jafari's disagreement with the reasons offered for his termination is not substantive proof that the reasons are pretextual. *See DeJarnette*, 133 F.3d at 299 ("it is the perception of the decision maker which is relevant, not the self-assessment of the defendant") (quoting *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)); *see also EEOC v.*

*Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992) (it is not the "function of this court to second guess the wisdom of business decisions.")

Jafari has not produced evidence by which a reasonable juror could conclude that he lost his job as a result of retaliation forbidden under the FLSA, and the Court, therefore, will grant summary judgment to the defendant on the FLSA anti-retaliation claim. Needless to say, the same reasons compel denial of the plaintiff's Motion for Summary Judgment.

## IV. CONCLUSION

For the above reasons, the Court DENIES Jafari's Motion for Summary Judgment (ECF No. 91), and GRANTS GRTC's Motion for Summary Judgment (ECF No. 89). The parties' remaining motions are DENIED AS MOOT.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

/s/
John A. Gibney, Jr.
United States District Judge

ENTERED 12/20/12